7950

## LANCASTER v. SOUTHERN LIFE INS. CO.

CONTRACTS—DAMAGES—CORPORATIONS.—Where an agent of a corporation makes a contract on behalf of the corporation with an individual which he performed in full, in good faith, which exceeded the authority of the agent and the powers of the corporation, the individual may have the contract rescinded and recover the damages sustained by him in performance.

Before DeVore, J., Richland, November, 1910. Affirmed.

Action by R. A. Lancaster against Southern Life Insurance Company by the following complaint:

1. "Upon information and belief, that at the times hereafter mentioned and at the present time, the defendant was and is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, engaged in the business of writing and selling life insurance.

2. "That the plaintiff, at the times hereafter mentioned and at the present time, was and is a resident of Richland county, State of South Carolina.

3. "That during the summer of 1907 the plaintiff entered into the following contract with an agent of the defendant to purchase certain shares of the capital stock of the defendant company, to wit: The defendant company by its agent agreed to sell to the plaintiff capital stock in the defendant company of the par value of one thousand ($1,000.00) dollars for twelve hundred and fifty ($1,250.00) dollars. The two hundred and fifty ($250.00) dollars above the par value to be a premium upon the stock, for which amount the plaintiff was to give his promissory note to the defendant (which note he was to actually pay), the note to mature on January 1, 1908, and the plaintiff to give his five negotiable promissory notes of two hundred ($200.00) dollars each, payable to the order of the defendant, in payment of the one thousand ($1,000.00) dollars,

par value of said stock; the said notes to mature, one each year from the date of said contract. And it was agreed by the defendant's agent, who made said contract, that the plaintiff should not be called upon to pay either the principal of the said five notes or the interest thereon, but that the plaintiff would be credited upon the principal and interest of the said five notes with all profits and dividends arising from the operation of the company prorated to the said one thousand ($1,000.00) dollars, par value worth of stock. And that if these profits and dividends did not amount to enough to pay the principal and interest of the said notes as they matured, then the notes would be renewed from time to time until both the principal and interest was paid in full by the profits and dividends, prorated as aforesaid. And the defendant, by its agent, agreed to issue said stock to the plaintiff upon the execution and delivery of the note for two hundred and fifty ($250.00) dollars, to mature on January 1, 1908 (which note was to be actually paid by the plaintiff), and upon the execution and delivery by the plaintiff of his five negotiable and promissory notes, payable to the order of defendant, for two hundred ($200.00) dollars each, as aforesaid, and to hold said stock so issued as security for the payment of the said five notes by the profits and dividends, prorated as aforesaid.

4. "That plaintiff did execute and deliver to the defendant his negotiable promissory note, payable on January 1, 1908, to the order of the defendant, for two hundred and fifty ($250.00) dollars, and promptly paid the same upon the maturity thereof, and the plaintiff also duly executed and delivered to the defendant his five negotiable promissory notes, payable to the order of the defendant, as aforesaid.

5. "That defendant has absolutely refused to issue this capital stock, of the par value of one thousand ($1,000.00) dollars, to the plaintiff, and has absolutely refused and

failed to do any act on its part in pursuance of said agreement.

6. "And plaintiff alleges, upon information and belief, that under the statutory and common law of the State of North Carolina it was and is illegal for the defendant to issue or to agree to issue this capital stock before the same was paid for in cash or its equivalent, and that it was and is illegal under said law for the defendant to agree to credit on said notes, given in payment for said stock, the profits and dividends prorated to this amount of stock arising from the operation of the company before the same had been paid for, and that it was equivalent to an agreement to issue said stock before the same had been paid for. And plaintiff further alleges, upon information and belief, that the said agreement would operate as a legal fraud upon the other stockholders of the defendant company who have paid for their stock, in that it would operate to deprive them of the profits arising from the operation of the company, and to which they were justly entitled.

7. "That the plaintiff is a layman and has no knowledge of law, and at the time of making of said contract had no idea that the same was in violation of law or that it would operate as a legal fraud upon the other stockholders, as defendant well knew. And that the information upon which the allegations in the sixth paragraph are made is derived from his attorneys, given him a long time subsequent to the making of said agreement.

8. "Upon information and belief, that the said agent who made said contract for the defendant company had no authority to make such an agreement, and was acting without the scope of his authority in making same. And the defendant has failed and refused to ratify said contract or to carry out the same according to its promise as made by the said agent, although the defendant accepted and received the two hundred and fifty ($250.00) dollars paid

by plaintiff, as alleged in paragraph four, well knowing the agreement made with plaintiff by its agent, as aforesaid.

"Wherefore, plaintiff demands judgment against the defendant for two hundred and fifty ($250.00) dollars, with interest at the rate of seven (7%) per cent. per annum from the date of which the said amount was paid to defendant, and that the said five notes be delivered up by defendant to the plaintiff and cancelled, and for such other and further relief as may be just and equitable in the premises."

## DEMURRER.

"Please take notice that upon the call of this case defendant intends to demur to your complaint and your reply to the answer in this case, and to move for judgment on the pleadings for the amount set up in the affirmative defense in the answer of the defendant upon the following grounds, to wit:

1. "Because it appears upon the face of the complaint and upon the face of the reply to the answer that sufficient facts are not alleged to constitute a cause of action, in that

"(a) It appears that the contract alleged to have been made between plaintiff and defendant entitles defendant to judgment, unless certain agreements alleged to have been made by defendant's agent constitute a cause for rescinding said contract, and because the alleged agreements were made by said agent without authority from his principal.

"(b) Because it appears upon the face of the papers that the stock which plaintiff undertook to purchase was, in accordance with the terms of the agreement, not to be actually delivered to plaintiff until his notes should be paid; and it further appears that these notes have not been paid.

"(c) Because it appears upon the face of the papers that the defendant company is still in existence and that there is no legal objection to the issuance of said stock immediately upon the payment of said notes.

"(d) Because it has not been alleged that any dividends or profits have been earned for which credit has not been allowed plaintiff.

"(e) Because want of knowledge of the laws of North Carolina, by reason of which plaintiff seeks to avoid the effect of his contract, is no legal cause or excuse for avoiding same.

"(f) Because it appears upon the face of the papers that the defendant company is about to go into liquidation, and the granting of the relief prayed for by plaintiff would amount to a fraud upon other stockholders and creditors of the defendant company.

2. "Because it appears on the face of the complaint and of the reply,

"(a) That the acts, conduct and alleged agreements of the agent of defendant, upon the strength of which plaintiff seeks a rescission of his contract, as alleged and endorsed by his notes, were not acts, conduct or agreements in reference to existing facts, but they amounted to nothing more than promises or opinions as to future anticipated results, and, therefore, cannot be made the basis of a charge of fraud.

"(b) That the alleged acts, conduct and agreements, upon the strength of which a rescission of plaintiff's contract is sought, were unauthorized by the defendant company."

Defendant appeals.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* for appellant, cite: *Contract to purchase made plaintiff a stockholder:* 1 Thomp. on Corp., secs. 1140, 1147; 91 U. S. 45; 10 Cyc. 380-1, 384, 391: 3 Thomp., secs. 3102, 3388. 3691; 10 Cyc. 526; 5 Am. St. R. 627; 91 U. S. 65; 102 U. S. 314; 8 Am. Dec. 128; 79 Am. Dec. 430; 10 Cyc. 541; 2 Cook on Corp., sec. 349. *To entitle plaintiff to rescission, defendant must have had notice of the terms of the con-*

*tract:* 2 Thomp., secs. 1366-7; 1 Cook, sec. 165; 10 Cyc. 423, 433, 464; 1 Thomp., sec. 1227; 2 Thomp., secs. 1311, 1395; 72 Am. Dec. 792; 78 Am. Dec. 731; 30 Am. R. 349; 3 Am. St. R. 823; 16 Wall. 390; 50 S. C. 259; 74 S. C. 374. *Plaintiff is entitled to stock upon payment of his notes:* 3 Thomp., sec. 3639; 2 Thomp., sec. 1962. *Shareholder is not entitled to profits until they are earned:* 2 Cook, sec. 546; 10 Cyc. 551, 554, 883; 2 Thomp., secs. 2152, 2227. *Ignorance of laws of North Carolina is no ground for rescission:* 68 S. C. 363; 85 S. C. 134; 10 Cyc. 526; 2 Thomp., secs. 1657, 1960, 1393; 4 Thomp., sec. 3748; 10 Cyc. 431; 1 Cook, sec. 147; 10 Rich. 278; 91 U. S. 45; 2 Thomp. 1370. *Defendant being about to go into liquidation, relief sought by plaintiff would be a fraud on stockholders and creditors:* 3 Am. St. R. 808; 10 Cyc. 440, 449, 451, 452, 469, 463; 2 Thomp., secs. 1511, 1512, 1514, 1516, 1517, 1518, 1573; 10 S. C. 155; 3 Am. St. R. 821; 10 Cyc. 425, 439, 442; 2 Thomp., secs. 1375, 1364. *Opinions as to future anticipated results cannot be made the basis of fraud:* 1 Cook, secs. 136, 146; 2 Thomp., secs. 1394, 1392; 50 S. C. 400; 2 L. R. A. 743; 56 Am. St. R. 196; 20 Cyc. 53; 36 Am. R. 199; 19 S. E. 178; 11 Am. St. R. 345; 2 Allen 212; 19 Am. Rep. 315; 41 Am. R. 215; 66 Fed. 189; 125 U. S. 247; 8 Ency. 643; 20 Cyc. 20. *Plaintiff is a party to the fraud:* 10 Cyc. 433-464; 1 Thomp., sec. 1227; 2 Thomp., sec. 1395; 72 Am. Dec. 792; 78 Am. Dec. 731; 30 Am. R. 349; 3 Am. St. R. 823; 16 Wall. 390; 19 S. C. 403.

*Messrs. Lyles & Lyles,* contra.

July 7, 1911. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action, in which the plaintiff seeks a recovery of judgment against the defendant, for $250.00 and the cancellation of certain notes.

There was a demurrer to the complaint, on the ground that it did not state facts, sufficient to constitute a cause of action, which was overruled.

His Honor, the presiding Judge, after hearing the testimony, granted the relief for which the plaintiff prayed, and the defendant appealed.

The first question that will be considered is, whether the Circuit Judge erred in overruling the demurrer to the complaint.

In determining this question, it will be necessary to refer to the complaint and the grounds of the demurrer, which will be reported.

There are allegations in the complaint, appropriate to an action for damages, arising out of the alleged breach of the contract, by reason of the defendant's failure, to perform its part thereof, although its agent may have exceeded his authority, when he entered into the agreement with the plaintiff.

The Court in the case of *Vought* v. *Eastern B. & L. Asso.,* 172 N. Y. 172, thus states the rule in such cases:

"We deem it unnecessary, at this time, to determine whether the defendant was authorized by that statute to enter into such contracts; for, if we assume that the making of them was in excess of the express power conferred upon the corporation by that statute, still, as the contracts involved no moral turpitude, and did not offend any express statute, they were not illegal in a sense, that would prevent the maintenance of an action thereon. It is now well settled, that a corporation cannot avail itself, of the defense of *ultra vires,* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance and of the contract. As has been said, corporations, like natural persons, have power and capacity to do wrong. They may, in their contracts and dealings, break over the restraints imposed upon them by their charters; and when they do so, their exemption

from liability cannot be claimed on the mere ground, that they have not attributes or facilities, which render it possible for them to thus act. While they have no right to violate their charters, yet they have capacity to do so, and are bound by their acts, where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong, to avoid a just responsibility. It may be that, while a contract remains unexecuted upon both sides, a corporation is not estopped to say, in its defense, that it had not the power to make the contract sought to be enforced; yet, when it becomes executed by the other party, it is estopped from asserting its own wrong, and cannot be excused from payment upon the plea, that the contract was beyond its power."

This language is quoted with approval, in *Eastern B. & L. Asso.* v. *Williamson,* 23 Sup. Ct. Rep. 527, and *Drewery* v. *Columbia Amusement Co.,* 87 S. C. 445, and is in harmony with the principle announced in *Williamson* v. *Eastern B. & L. Asso.,* 54 S. C. 582, 32 S. E. 765.

In the case of *B. & B. Ry. Co.* v. *McDonald,* 60 Am. St. Rep. 172, it is correctly said by the Court: "The general rule is, that where a private corporation, has entered into a contract, not immoral in itself, and not forbidden by the statute, and it has been in good faith performed by the other party, the corporation will not be heard on a plea of *ultra vires.*" The principle is thus stated in the case of *Washington Gas Light Co.* v. *Landsden,* 19 Sup. Ct. Rep. 300: "The corporation can be held responsible, for acts which are not strictly within the corporate powers. but which were assumed to be performed for the corporation, and by the corporate agents, who were competent to employ the corporate powers, actually exercised."

But, as was said by the Court in the case of *Williamson* v. *Association,* 54 S. C. 582, 32 S. E. 765: "If the agreement was *ultra vires,* and the association entered into it, knowing it could not perform its part thereof, and thereby

induced the plaintiff, to part with his money in the purchase of stock, then it was a tort, and the defendant would be liable therefor. Furthermore, even if the agreement was *ultra vires,* and the defendant could interpose this plea, it would not be allowed to retain the benefits, which it derived therefrom, and this would give the plaintiff a cause of action." (Citing *North Hudson B. & L. Asso.* v. *Bank,* 11 L. R. A. 845.)

There are also allegations, appropriate to an action for rescission of the alleged agreement, on the ground that the defendant's agent, was not authorized to enter into the agreement, and that the defendant refused to ratify his acts. The allegations of the complaint are, therefore, appropriate to an action, both on the law and the equity side of the Court.

A complaint is not subject to demurrer, if it contains allegations entitling the plaintiff to relief, either on the law or the equity side of the Court. *Bank* v. *Dowling,* 45 S. C. 677, 23 S. E. 982; *Latham* v. *Harby,* 50 S. C. 428, 27 S. E. 862; *Simon* v. *Sabb,* 56 S. C. 38, 33 S. E. 799.

The plaintiff's cause of action for rescission, is based upon the theory, that the agreement into which he entered with the defendant's agent, was invalid *in toto,* and that there never was a binding contract, between the parties.

On the other hand, the grounds of demurrer upon which the defendant relied, rest upon the proposition, that there was a binding contract between the parties, although certain parts thereof, were without force and effect, by reason of the fact, that the agent exceeded his authority, and that the defendant refused to ratify his acts, to that extent.

Conceding that there are allegations in the complaint, giving rise to both theories, the Court could not sustain the proposition, for which the defendant contends, without assuming that there was a binding contract, between the parties, which, of course, it cannot do.

As the allegations of the complaint, are sufficient to show that the plaintiff has complied with the terms of the contract, but that the defendant has refused to perform its part thereof; also, that the agreement was not only without force and effect in part, but *in toto,* the demurrer was properly overruled.

The defendant appealed upon other exceptions, besides those assigning error in overruling the demurrer.

It will not be necessary to consider them *seriatim,* as several of the questions presented by them, become merely speculative, in the light of our conclusions upon the pivotal issues in the case.

The defendant's answer to the complaint, contained a denial of certain allegations; and, by way of defense, a counterclaim for one thousand dollars, based upon the five notes, each for two hundred dollars, described in the complaint. No other defenses were interposed.

We have not undertaken to state in detail, our review of the testimony, for the reason that both the plaintiff and the defendant concede, that the agent exceeded his authority, when he entered into the contract, and that the defendant refused to ratify his acts to that extent. If the plaintiff had seen fit, he might have proceeded against the defendant, for refusing to comply with the terms of the contract, on the ground, that he was induced by the defendant's agent, to become a stockholder, and that the defendant was estopped from pleading that the acts of the agent were *ultra vires.*

But he also had the right, to bring an action for rescission of the contract. And as it is conceded by both parties, that the agent was without authority, and that the defendant refused to ratify the transaction, the plaintiff was entitled to the relief granted in the decree.

Judgment affirmed.